IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VILLANUEVA-CRUZ,<br><br>**Plaintiff**<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>**Defendants** | CIVIL NO. 10-2075 (JAG) |

OPINION AND ORDER

Garcia-Gregory, D.J.

Pending before the Court is defendants' Motion to Dismiss. (Docket No. 14). Plaintiff timely opposed. (Docket No. 19). For the reasons that follow, the Court grants in part defendants' Motion to Dismiss.

PROCEDURAL BACKGROUND

Plaintiff Raimundo Villanueva-Cruz ("Villanueva" or "plaintiff") filed a *pro se* complaint against the Puerto Rico General Services Administration ("GSA"), the Commonwealth of Puerto Rico ("Commonwealth"), and several of his co-workers alleging violations of a wide gamut of federal and state law.[1]

---

[1] Specifically, plaintiff alleged violations of his rights under: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (2) Title V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; (3) the Rehabilitation Act,

(Docket No. 1). Plaintiff submits that his employer retaliated against him due to an EEOC[2] claim he filed alleging discrimination on account of his race, as well as for his participation in a co-worker's disability discrimination EEOC claim. Plaintiff also alleges that he was subjected to a hostile work environment due to his colleagues' discriminatory remarks and his employer's retaliation. Several months later, plaintiff obtained legal representation and submitted an amended complaint that substantially reduced the number of federal and state causes of action asserted in the complaint. (Docket No. 10).

Defendants then moved to strike the amended complaint and, on the same day, sought leave to file a 36-page Motion to Dismiss. (Docket Nos. 12-14). The Court granted the request for excess pages, but denied the motion to strike the complaint. (Dockets No. 13). By inadvertence, the Court did not realize that the excess pages requested were largely in response to the original, not the amended, complaint. Given that the amended complaint withdrew several federal and state causes of action, a large portion of defendants' motion to dismiss is now moot.

---

34 C.F.R. § 100.7(e); 42 U.S.C. §§ 2000d, 2000d-1; 29 U.S.C. § 794a(2); (4) the First and Fourteenth Amendments of the United States Constitution, brought under 42 U.S.C. § 1983; (5) Puerto Rico Law 44 of August 25, 1985; (6) Puerto Rico Law 115 of December 30, 1991; and (7) Puerto Rico Law 426 of November 7, 2000.
[2] Equal Employment Opportunity Commission.

CIVIL NO. 10-2075 (JAG)                                                    3

Therefore, the Court dismisses **without prejudice,** pursuant to
Fed. R. Civ. P. 41(a)(1)(A)(i),[3] plaintiff's claims brought
under: (1) Title VII and ADA against defendants in their
individual capacity; (2) the Rehabilitation Act; (3) § 1983
against the Commonwealth and the GSA; (4) the Fourteenth
Amendment's Due Process Clause; and (5) Puerto Rico Laws 44, 426
and 115. (Cf. Docket Nos. 1, 10; see also Docket Nos. 11, 19).
Additionally, the Court dismisses, **without prejudice** as well,
plaintiff's claims against co-defendant Marielis Rivera-Cosme.
(Docket No. 19, p. 13).

Remaining before the Court are plaintiff's claims brought
under Title VII and ADA against the Commonwealth and the GSA, as
well as his § 1983 claims against his co-workers in their
individual capacity brought under the First Amendment and the
Fourteenth Amendment's Equal Protection clause. Finally, the
amended complaint invokes this Court's supplemental jurisdiction
to attend to plaintiff's claim under Puerto Rico's general tort
statute, Article 1802 of the Puerto Rico Civil Code, 31 P.R.
Laws Ann. § 5141.

---

[3] Plaintiff provided notice of the intent to withdraw these
claims in their Informative Motion regarding Filing of Amended
Complaint. (See Docket No. 11).

## FACTUAL BACKGROUND[4]

Plaintiff Villanueva, an African-American, has been in the public service for more than twenty years. Since 2004, plaintiff held the position of Administrative Director of the Puerto Rico GSA, a position he presumably still holds today.

In 2008, plaintiff's fellow co-worker Nathan Pinzón-Bilbraut ("Pinzón") worked for the GSA under a federally-funded employment program. A federal statute required the recipients of those federal funds to establish and implement anti-discrimination provisions. Accordingly, plaintiff and Ivan Toledo-Colón ("Colón"), plaintiff's immediate supervisor, obtained government-issued posters advising employees about their rights and obligations under state and federal anti-discrimination statutes. Toledo and plaintiff then placed these posters in the GSA's working areas.

EEOC Complaints

In November of 2008, plaintiff witnessed several of his co-workers making discriminatory remarks against Pinzón because of

---

[4] The following is a summary of the complaint's factual allegations. (See Docket No. 10, p. 2-7). In summarizing plaintiff's allegations, the Court will disregard any legal conclusion presented as fact, as well as any threadbare recital of a cause of action. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

his mental disabilities. Plaintiff informed his immediate supervisor, Toledo, of the discriminatory remarks made against his co-worker. Pinzón complained to Toledo that Zaida Santana-Sanabria had asked him to carry out certain tasks that his condition did not allow him to perform, in order to give Pinzón a negative evaluation of his performance. As a result, Toledo told plaintiff to supervise Pinzón, and later ordered plaintiff to take Pinzón's complaints to William Marrero-Calderon ("Marrero"), then Auxiliary Manager of the GSA's human resources division.

In February 2009, co-defendant Carmen Coronas-Aponte ("Coronas") replaced Toledo as plaintiff's supervisor. That month, Pinzón filed an EEOC discrimination charge against the GSA. Plaintiff served as a witness in the EEOC's investigation of Pinzón's charge. Toledo also filed his own EEOC charge alleging race discrimination. Plaintiff served as a witness in this proceeding as well. Finally, plaintiff brought his own EEOC charge alleging racial discrimination against the GSA. In sum, plaintiff served as a witness in two EEOC complaints brought by his co-workers, as well as filing his own EEOC charge.

The GSA's Response to the EEOC Complaints

Plaintiff claims that, from February through June 2009, Carmen Coronas retaliated against plaintiff for his

participation in the three EEOC investigations mentioned above. To support his contention, plaintiff alleges that Coronas deprived him of duties inherent to his position; instructed "plaintiff's underlings [to] ignore plaintiff's legitimate orders;" and tolerated or took no action towards the disparaging remarks regarding plaintiff's race made by his co-workers. (Docket No. 10, p. 4-5). Plaintiff also claims that he was excluded from staff meetings regarding administrative affairs of the Office of Administrative Services, as well as from participation in the revision and execution of the GSA's contracts relating to services rendered to the agencies of the Commonwealth. (Id. at p. 5). Finally, plaintiff avers that "Coronas effectively precluded plaintiff (despite his managerial position) from participating in the [supervision and administration] of the programmatic services of the [GSA]." (Id.).

On March 2009, plaintiff sent an email to Coronas asking her to intervene in a situation where one of plaintiff's subordinates, Jerry Calderon-Rosario, was disobeying plaintiff's orders. Instead of intervening, Coronas ignored the request and allowed the insubordination to continue. Coronas then began "obsessively monitoring" plaintiff's movements in the workplace, which according to plaintiff, hampered his performance.

That same month, two attorneys for the GSA, Iris Vizcarrondo ("Vizcarrondo") and Teresa Garcia ("Garcia"), asked plaintiff to prepare a report regarding the complaints voiced by Pinzón. Plaintiff states that Vizcarrondo was the officer tasked with investigating and defending EEOC charges against the GSA. According to plaintiff, Vizcarrondo was a personal friend of Zaida Santana, whose acts were being called into question in Pinzón's EEOC charge. Plaintiff asked for additional time so that he could consult the matter with an attorney. The GSA attorneys denied plaintiff's request.

The GSA attorneys also asked Toledo to submit a similar report, which he did on March 27, 2009. Though Toledo attested to the discriminatory actions against Pinzón, the EEOC dismissed the complaint, stating that the internal investigation (conducted by the GSA attorneys) did not reveal any evidence of discrimination. Plaintiff submits this was due to defendants' goal of sweeping "all evidence of discrimination under the rug," to "give the EEOC the false impression that the [GSA] was in compliance with the pertinent anti-discrimination legislation." (Docket No. 10, p. 6).

In May 2009, plaintiff met with Toledo and informed him of the situation. Plaintiff also showed Toledo a document "that was being distributed amongst the agency's employees (with Coronas'

knowledge and consent) containing racial attacks based on the color of plaintiff's skin." (Docket No. 10, p. 6). Toledo then decided to elevate the matter to the GSA's Deputy Administrator, co-defendant Jesus Mendez-Rodriguez ("Mendez"), and to the EEOC's investigator, Luiz Calzada. On May 4, 2009, Toledo sent an email to co-defendants Mendez and GSA attorney Garcia informing them of the situation with plaintiff. Plaintiff states that this gesture did not bear fruit; allegedly, Mendez and Garcia did nothing to end the discriminatory atmosphere at the GSA. Plaintiff mentions that other employees who had testified in the aforementioned EEOC proceedings, who happened to be white, did not suffer from the same campaign of retaliation as did plaintiff.

According to plaintiff, the combined effect of the supervisors' inaction was that his co-workers felt free to harass and discriminate against him. Plaintiff claims that he received racially charged comments on a daily basis. For example, plaintiff was called "el camaleon" (the chameleon) by his co-workers. (Docket No. 10, p. 7). In sum, plaintiff contends that the discriminatory comments and letter, the interference with his EEOC testimony, and his supervisors' indifference towards the unruliness of his subordinates are

enough to support the causes of action he now brings to federal court.

## STANDARD OF LAW

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted.  To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action."  Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted).  In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "actual proof of those facts is improbable."  Id.  Finally, the court assesses whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief."  Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry forces on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

## DISCUSSION

The Court will attend to defendants' arguments *seriatim*, omitting those parts that have been mooted by plaintiff's amended complaint.

### I.   Title VII: Retaliation due to Race and Color

As a preliminary matter, the Court notes that plaintiff's opposition to defendant's motion to dismiss states that his amended complaint "does not purport to seek relief for retaliation under Title VII." (Docket No. 19, p. 3-4). However, the amended complaint says otherwise, for the first cause of action shows that plaintiff is seeking damages against the Commonwealth and the GSA for retaliatory discrimination under Title VII. (Docket No. 10, p. 8). The Court is under the impression that, as plaintiff had stated elsewhere, he had retired his claims under Title VII solely as to the *individual* defendants. (See Docket No. 19, p. 8). As such, the Court will

CIVIL NO. 10-2075 (JAG)                                            11

attend   exclusively   to   defendant's   arguments   regarding
plaintiff's Title VII claims against the Commonwealth and the
GSA.

Title VII makes it unlawful "to discriminate against any
individual with respect to [their] compensation, terms,
conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin." 42
U.S.C. § 2000e-2(a)(1). Similarly, Title VII prohibits an
employer from discriminating against any of its employees

> because [the employee] has opposed any practice made
> an unlawful employment practice by this subchapter, or
> because he has made a charge, testified, assisted or
> participated in any manner in an investigation,
> proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3.

Defendants' sole argument is that none of the three EEOC
complaints filed against the GSA charged the agency with
discrimination on the basis of race or color, as required by
Title VII. For example, Pinzón's EEOC claim was grounded
exclusively on the discrimination he suffered on account of his
mental disability. (See Docket No. 14-3). Consequently,
Plaintiff's derivative EEOC charge due to his employer's alleged
retaliation for his participation in the Pinzón investigation
was not based on racial discrimination. Plaintiff does not
dispute this point. Thus, defendants argue, plaintiff's

participation in these proceedings did not mean that he was opposing an employment practice *made unlawful by Title VII*. We agree.

However, the same cannot be said about the EEOC charges brought by the plaintiff himself. Defendants call the attention of the Court to the cover page of the EEOC charges filed by plaintiff, attached as exhibits 1 and 2 to their Motion to Dismiss.[5] (See Docket No. 14-1, 14-2). Defendants contend that these cover letters indicate that both charges were exclusively based on "retaliation" and not discrimination. As such, they argue, plaintiff never exhausted administrative remedies with respect to a Title VII racial discrimination charge.

This argument is unavailing. As stated in the complaint, plaintiff filed two EEOC charges: one for his participation in Pinzón's EEOC investigation, and the other on his own behalf. Both cover letters contain a section titled "Discrimination Based On," followed by a series of boxes indicating the type of discrimination suffered. In both cover letters, plaintiff checked the "retaliation" box, while leaving unchecked the

---

[5] Plaintiff counters that the attachments to these cover letters clearly show that one of his retaliation claims was based on racial discrimination. Plaintiff avers that if defendant seeks dismissal on this ground, the proper method would be to move for summary judgment and attach the whole document as an exhibit. In any event, the Court finds that dismissal is unwarranted even without consideration of this document.

"race," "color," and "disability" boxes. Thus, the most this Court may glean from those cover letters is that plaintiff had filed two separate retaliation charges before the EEOC. This does not foreclose the possibility that one of them was based on Pinzón's disability, while the other was based on Toledo's racial-discrimination EEOC charge.

As noted above, that was the extent of defendants' argument with respect to the Title VII claims asserted by plaintiff. Thus, the Court denies defendants' motion to dismiss on this point.

II. <u>Title V of the ADA</u>

Congress enacted the Americans with Disabilities Act to address the problems faced by persons with disabilities in accessing public facilities, employment and transportation services. 42 U.S.C. §§ 12101-213. The ADA is structured as follows:

> The ADA itself has five titles, three of which are meant to eliminate in a distinct area discrimination against persons with disabilities. Title I of the ADA, 42 U.S.C. §§ 12111-12117, addresses discrimination by employers affecting interstate commerce; Title II, *id*. §§ 12131-12165, addresses discrimination by governmental entities in the operation of public services, programs, and activities, including transportation; and Title III, *id*. §§ 12181-12189, addresses discrimination in public accommodations and services operated by private entities.

CIVIL NO. 10-2075 (JAG)                                                14

Buchanan v. Maine, 469 F.3d 158 (1st Cir. 2006). Title V
contains an anti-retaliation provision (identical to the one
contained in Title VII, 42 U.S.C. § 2000e-3), which states that:
"[n]o person shall discriminate against any individual because
such individual has opposed any act or practice made unlawful by
this Act or because such individual made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing under this Act." 42 U.S.C. § 12203.

     The complaint charges the Commonwealth and the GSA with
retaliating against plaintiff due to his participation in
Pinzón's EEOC disability discrimination proceeding. Plaintiff
alleges that the GSA punished him for participating in Pinzón's
investigation, and that the agency "went as far as attempting to
influence plaintiff's testimony before the EEOC." (Docket No.
10, p. 8).

     Defendants' sole argument is that the Eleventh Amendment
bars plaintiff's ADA retaliation claim under Title V. However,
before a district court may attend to defendant's Eleventh
Immunity argument, it must first decide whether the complaint
states a plausible ADA violation. Buchanan, 469 F.3d 158, (1st
Cir. 2006). Here, however, defendants fail to set forth any
argument that would allow the Court to examine the plausibility
of plaintiff's ADA claim. Thus, the Court finds that the issue

is insufficiently briefed for dismissal to be proper. Defendants' motion to dismiss plaintiff's ADA claim is hereby denied.

Though we have already disposed of this issue, the Court finds it necessary to forewarn defendants that if they decide to invoke the Eleventh Amendment ADA defense in the future, a fuller briefing is compulsory.

As is well known, the Eleventh Amendment protects states from suits filed by citizens seeking money damages in federal courts, unless the state being sued has waived its immunity or otherwise consents to the suit. Rossi–Cortes v. Toledo-Rivera, 540 F.Supp.2d 318, 324–325 (D.P.R. 2008). In Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), the Supreme Court found that Congress did not validly abrogate the States' immunity from suits filed by individuals seeking money damages under Title I of the ADA. In contrast, the Supreme Court held just the opposite in Tennessee v. Lane, 541 U.S. 509 (2004) with respect to Title II of the ADA, finding that Congress had validly abrogated the States' immunity with respect to claims brought under that title.

Defendants recognize that neither the First Circuit nor the Supreme Court has decided whether Garrett extends to suits filed under Title V of the ADA. Thus, defendants invoke Demshki v.

Monteith, 255 F.3d 986 (9th Cir. 2001), in which the Ninth
Circuit held that Garrett's immunity analysis extends to claims
brought under Title V of the ADA. Defendants assert that the
"prevailing law" compels a dismissal of plaintiff's Title V ADA
claim.

There are several problems with defendant's position.
Neither the Supreme Court nor the First Circuit has decided this
issue. Furthermore, Demshki is not binding precedent on this
Court, and was decided prior to the Supreme Court's decision in
Tenessee v. Lane, *supra*. As plaintiff notes, even Judges in this
district are split on the matter. See Collazo-Rosado v.
University of P.R., 775 F.Supp.2d 376 (D.P.R. 2011)(Dominguez,
D.J., finding that immunity exists); Mendez-Vazquez v. Tribunal
General de Justicia, 477 F.Supp.2d 406, 412-413 (D.P.R.
2007)(Pieras, D.J., finding that the Commonwealth is not immune
from suit under Title V of the ADA).

Given the lack of guidance from the appellate courts, the
Court finds that defendant's one-page argument would be
insufficient to allow the Court to make an informed decision on
this issue.

III. Section 1983 Claims: 1st Amendment and Equal Protection

Section 1983 provides a right of action against those who violate constitutional rights. <u>Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colóny</u>, 538 U.S. 701, 708 (2003).   To state a claim under section 1983, plaintiff must plausibly plead that: (1) he was deprived of a constitutional right; (2) "a causal connection between [Defendants' conduct] and the [constitutional] deprivation"; and (3) that the defendants acted under color of state law. <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 41 (1st Cir. 2009)(citing 42 U.S.C. § 1983). Plaintiff's § 1983 claims are couched in violations of the First and Fourteenth Amendments of the Constitution.

a. <u>First Amendment</u>

Plaintiff claims that defendants retaliated against him for his participation in the Pinzón EEOC investigation. Defendants counter that plaintiff's testimony in that proceeding was not a matter of public concern and thus, was not protected speech under the First Amendment. Plaintiff's claim requires the Court to engage in a three part inquiry, assessing:

> (1) whether the speech involves a matter of public concern; (2) whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected

CIVIL NO. 10-2075 (JAG)                                          18

speech was a substantial or motivating factor in the
adverse action against the plaintiff.

Rosado-Quinones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008).

There is no question that plaintiff's speech – calling out
his employer for the allegedly discriminatory treatment suffered
by Pinzón – falls in the domain of public interest. See Connick
v. Meyers, 461 U.S. 138, 148 n.8 (1983). Moreover, it matters
little that plaintiff gave his statements in the context of an
EEOC proceeding rather than to the public at large. See id.
(citing Givhan v. Western Line Consol. School Dist., 439 U.S.
410, 415-16 (1979))("right to protest racial discrimination -a
matter inherently of public concern- is not forfeited by [the
plaintiff's] choice of a private forum").

Plaintiff alleges that the agency's attorneys pressured him
into giving them his version of the facts, even though the EEOC
investigation was still ongoing. Taking all inferences in favor
of plaintiff, the Court finds the second prong satisfied. There
is no legitimate governmental interest in interfering or
tampering with an ongoing EEOC investigation. Defendants make no
cognizable arguments regarding the third prong. In any event,
the Court finds that the complaint crosses the threshold of
plausibility in this regard.

As an aside, the Court considers Defendants' reliance on
Garcetti v. Ceballos, 547 U.S. 410 (2006), misplaced. In that

case, the Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Id. at 421. It is untenable to state that plaintiff's opposition to his employer's allegedly discriminatory practices was one of his official duties as an administrator.

   b. Equal Protection

   Plaintiff claims that his employer did not discriminate against other white co-workers who testified in EEOC proceedings.[6] Defendants, citing Cooper v. Aaron, 358 U.S. 1 (1958), argue that Equal Protection claims require plaintiff to demonstrate that the inequality is the result of a statute. However, the lack of a suspect law is not grounds for dismissal of plaintiff's claim; the First Circuit has also allowed Equal Protection claims grounded on discriminatory actions of an employer. See Rios-Colón v. Toledo-Davila, 641 F.3d 1, 5 (1st Cir. 2011)(finding a plausible Equal Protection claim where the court could infer that "that [defendant] discriminated against [plaintiff] in official acts, depriving him of significant advantages because of his race."). Defendants' argument is unavailing.

---

[6] It is not clear whether those employees testified in the proceedings at issue here, or other EEOC investigations implicating the GSA. In any event, defendants do not press this issue.

CIVIL NO. 10-2075 (JAG)                                                    20

    c. <u>Supervisory Liability</u>

It is well-settled that § 1983 supervisory liability may not be based on *respondeat superior*, <u>Ayala-Rodriguez v. Rullan</u>, 511 F.3d 232 (1st Cir. 2007); rather, it can only be grounded on the supervisor's *own* acts or omissions. <u>Diaz v. Martinez</u>, 112 F.3d 1, 4 (1st Cir. 1997). However, not just any act or omission leads to liability; plaintiff must show that the supervisor acted with deliberate indifference to plaintiff's constitutional rights. This level of indifference is shown where 1) there exists a grave risk of harm; 2) the official has actual or constructive knowledge of that risk; and 3) the official fails to take easily available measures to address that risk. <u>Camilo-Robles v. Hoyos</u>, 151 F.3d 1, 7 (1st Cir. 1998).

Plaintiff claims that Deputy Administrator Mendez, his supervisor at the GSA, is liable for his failure to stem the discriminatory practices at the GSA. Plaintiff specifically states that Mendez was apprised, through an email sent by Toledo, of the discriminatory statements and atmosphere at the GSA. Yet, Mendez did nothing to remedy the situation. Clearly, plaintiff was harmed by the discriminatory comments in his workplace, Mendez had actual (or otherwise constructive) knowledge of the situation, yet failed to take any action in response. The complaint states a plausible claim in this regard.

The situation is different with respect to Administrator Carlos Vazquez-Pesquera ("Vazquez"). Plaintiff argues that Vazquez himself attempted to influence plaintiff's EEOC testimony through the GSA attorneys. However, the Court finds such an inference unsustainable. According to the complaint, the GSA attorneys asked plaintiff to prepare a report on the complaints voiced by Pinzón. (Docket No. 10, ¶ 3.20). The complaint then states that "these defendants asked plaintiff to e-mail his report to them so that it could be tailored to fit co-defendant Vazquez's version of the facts." (Id.).

These statements imply no action on the part of Vazquez. For instance, the complaint does not state that Vazquez ordered the attorneys to procure such a report. Moreover, the complaint does not allow the Court to infer that the GSA attorneys were under Vazquez's command or that he had actual or constructive knowledge of the situation. Essentially, Plaintiff asks the Court to deduce, from the sole actions of the GSA attorneys, that Vazquez is liable. This is insufficient to establish an "affirmative link" between the constitutional violation suffered by plaintiff and any action on the part of Vazquez. Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Thus, the complaint "stops short of the line between possibility and plausibility of entitlement to relief." Ocasio-Hernández v.

CIVIL NO. 10-2075 (JAG)                                              22

Fortuño Burset, 639 F.3d at 12. Plaintiff's claims against
Vazquez are hereby dismissed with prejudice.

    d.   Failure to State a Claim against Individual Co-
Defendants

    Defendants argue that the complaint fails to state a claim
against co-defendants Marielis Rivera, Carmen Coronas, Teresa
Garcia and Iris Vizcarrondo. This argument may quickly be
dismissed. First, defendants' argument is moot as to Rivera,
given that plaintiff removed her from the amended complaint.
Second, Coronas was the main actor in plaintiff's First
Amendment and Equal Protection causes of action, in which the
Court found a plausible claim for relief. Likewise, Vizcarrondo
and Garcia, the GSA attorneys, contributed to a plausible
violation of plaintiff's First Amendment rights. Thus,
defendants' arguments are unavailing.

    e. Qualified Immunity

    "The qualified immunity doctrine provides public officials
an immunity from suit and not a mere defense to liability."
Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009)(citing
Mitcell v. Forsyth, 472 U.S. 511, 526 (1985)). To determine
whether a defendant is entitled to qualified immunity, the Court
applies a two-part test. Id. "A court must decide: (1) whether

the facts shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'" Id. (citing Pearson v. Callahan, 129 S.Ct. 808, 815-16)). Here, the first prong is not at issue, given that the complaint states plausible violations of plaintiff's constitutional rights.

Defendants argue that, since any action they took was "made in an attempt to evaluate the ongoing [EEOC investigation] …, it was reasonable for appearing defendants to believe that their actions were legal." (Docket No. 14, p. 35). Defendants' unsupported justification, one sentence long and nebulous at best, does nothing to explain either the first or second elements of the test. Accordingly, the Court finds the argument insufficiently developed; defendants' motion in this regard is hereby denied. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

IV. Puerto Rico Law

As mentioned above, the amended complaint withdrew all causes of action raised under Puerto Rico law, with the exception of the damages claim alleged under Puerto Rico's

CIVIL NO. 10-2075 (JAG)                                                  24

general tort statute. Defendants make no arguments concerning plaintiff's claim under this specific statute. Thus, the Court will leave untouched plaintiff's state-law tort claim.

### CONCLUSION

In light of plaintiff's amended complaint, the Court hereby dismisses**, without prejudice,** plaintiff's claims arising under: (1) Title VII and ADA against defendants in their individual capacity; (2) the Rehabilitation Act; (3) § 1983 against the Commonwealth and the GSA; (4) the Fourteenth Amendment's Due Process Clause; and (5) Puerto Rico Laws 44, 426 and 115. (Cf. Docket Nos. 1, 10; see also Docket Nos. 11, 19). The Court also dismisses, **without prejudice** as well, plaintiff's claims against co-defendant Marielis Rivera-Cosme. (Docket No. 19, p. 13). On the other hand, the Court dismisses **with prejudice** plaintiff's claims against co-defendant Carlos Vazquez-Pesquera.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of May, 2012.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge